IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                         Criminal No. 3:15cr101

STEPHAN R. SMITH

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's SECOND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 77) ("Second Motion"). Having considered the Second Motion, the United States' Response in Opposition to Defendant's Second Motion for Compassionate Release (ECF No. 81), and the DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS SECOND MOTION FOR COMPASSIONATE RELEASE (ECF No. 85), it is hereby ORDERED that the SECOND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 77) will be denied.

**BACKGROUND**

On October 22, 2015, Stephan R. Smith pled guilty to Counts One and Three of a three-count indictment. Count One charged a conspiracy to distribute five kilograms or more of cocaine and Count Three charged possession of a firearm by a convicted felon. According to the record, the conspiracy involved in Count One

lasted from November 2012 to November 2013 and during that time Smith distributed approximately two kilograms of cocaine per month and, as part of the conspiracy, he possessed ammunition and two firearms (a semi-automatic handgun and a revolver). According to the record, Smith dealt in both cocaine powder and cocaine base. His practice, according to the evidence, was to buy two kilograms of cocaine at a time, converting some into crack, breaking the kilograms down into ounces for redistribution, and selling the cocaine for approximately $1,400 per ounce. Smith had approximately eight sub-dealers to whom he was selling both cocaine base and cocaine powder in multi-ounce quantities. According to the Presentence Report, Smith's operations were profitable because he had a total net worth of approximately $117,000 at the time of convictions.

The total offense level for the offenses of conviction was 31. Smith's criminal history category was IV. He appears to have had no juvenile convictions. His convictions as an adult included convictions for possession of heroin and marijuana in 1996 for which he received a suspended sentence; a conviction for possession of cocaine in 2000 for which he received a five year sentence with four years and nine months suspended; and a conviction in 2002 for conspiracy to distribute cocaine for which he received a sentence of five years in jail with four years and six months suspended.

He also had convictions for numerous traffic convictions and assault and battery. The applicable guideline sentence for Count One was 151 to 188 months and for Count Three, 180 months. Those terms were combined. The statutory maximum for Count One was ten years to life and the maximum term for Count Three was ten years.

On October 26, 2015, Smith was sentenced to a term of imprisonment of 188 months and the sentence was reduced to 120 months of incarceration subsequently. The defendant is currently confined in FCI Petersburg.[1] Smith is actually confined to the FCI Petersburg Low, a low security facility. His release date is March 20, 2024. FCI Petersburg Low houses 646 inmates but it is a part of a larger facility. As of the date of the filing of the Government's papers, there were no inmates or staff members at FCI Petersburg Low who tested positive for COVID-19 and there were 275 inmates and 39 staff members who previously tested positive for COVID-19 and have since recovered.

Smith mailed a request for compassionate release to the Warden who denied the request advising that the defendant's medical issues were "being well managed at this point and not causing a life

---

[1] For reasons not obvious, the filing by the Probation Office (ECF No. 80) contains a notation respecting information from an attorney at the Butner Legal Center respecting Smith's exhaustion of remedies. But the record shows that the documents referred therein to were submitted to the Warden at FCI Petersburg. (ECF No. 81-1).

3

threatening medical problem," and that the defendant is "stable, can perform all Activities of the Daily Living (ADL) independently and [the defendant's] medical issues do not diminish [his] ability to function in a correctional setting."

Smith thereafter filed this motion arguing that he is particularly susceptible to contracting COVID-19 because of medical conditions including hypertension, hyperlipidemia, severe obesity, sleep apnea, Hashimoto's thyroid disease, gum disease, and diabetes in remission. He also grounds his request for compassionate release on the need to be released to attend his aging and ailing father. The record reflects that the defendant has received both doses of the Moderna COVID-19 vaccine. His first dose was in January 2021 and his second dose was in February 2021. The record does not reflect that he has contracted COVID-19 before or since the vaccinations.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate

4

release under § 3582(c)(1)(A)(i). <u>United States v. White</u>, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. <u>United States v. Raia</u>, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, <u>inter alia</u>, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The guidelines teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." <u>United States v. Ayon-Nunez</u>, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at

5

[his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020).

1. **Particularized Susceptibility**

The defendant has established that he suffers from hypertension, hyperlipidemia, severe obesity, sleep apnea, Hashimoto's thyroid disease, gum disease, and diabetes in remission. Some of those conditions present a greater susceptibility to COVID-19. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Smith bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Smith has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues. Smith's diabetes is in remission but he remains severely obese.

The record also shows that Smith has been fully vaccinated against COVID-19 since February 2021. Smith received both doses of the Moderna vaccine. According to the vaccine manufacturers and the CDC, that vaccination protects individuals from getting sick with COVID-19 and prevents those individuals who contract breakthrough infections from getting seriously ill even if they do contract the virus. *Key Things to Know About COVID-19 Vaccines*, CDC (May 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html. And, the CDC says that the Moderna vaccine is 94.1% effective at preventing illness from COVID-19. *Moderna COVID-19 Vaccine Overview and Safety*, CDC (Apr. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html.

Further, because the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus. United States v. Stoddard, No. 1:14cr76, 2021 WL 2379568, at *5 (E.D. Va. Va. June 9, 2021); United States v. Cabaase, No. 2:10cr57, 2021 WL 2346106, at *4 (E.D. Va. June 8, 2021); United States v. Jones, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021). Smith has been vaccinated, and he has not made

7

the showing that he nonetheless suffers from any extraordinary condition that is terminal or severely limits his ability to function in a correctional setting.

In sum, Smith has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Smith met the particularized facility risk component of the appropriate test.  His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Petersburg Low, the defendant's facility of incarceration.  Further, the record reflects that, at the time of the filing of the Government's papers, FCI Petersburg Low had no active case of COVID-19 among inmates, no active cases of COVID-19 among staff, and 275 inmates and 39 staff members who had previously recovered from COVID-19.  In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.  The record also shows that a very high level of vaccinations (inmates and staff) has been achieved at FCI Petersburg Low.

8

On this record, Smith has not met the particularized facility component of the applicable test.

### 3. Need to Care for a Parent

Smith also asserts that the desire and need to care for an ailing parent is ground for a compassionate release. Other courts have confronted this issue and have held that a need to care for, or a desire to care for, an ailing parent is not a sufficient basis for compassionate release. See, e.g., United States v. Ingram, No. CR CJH-15-392, 2020 WL 3183698, at *2 (D. Md. June 15, 2020) in which the court, citing a collection of cases, explained that a parent's health is not an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A). The decision in Ingram is persuasive and the Court subscribes to it here. Moreover, the record shows that there are others who can care for Smith's father. Accordingly, his request for compassionate release based on the desire to care for a parent will be denied.

### 4. Assessment Under 18 U.S.C. § 3553(a)

But, even if Smith had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of

9

the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he is a non-violent drug offender, has a clear record in prison (no infractions), is in a low security facility, and his prison work and programming has been outstanding.

Those arguments ignore the fact that Smith orchestrated a vast conspiracy of drug distribution and was fully prepared to use firearms to protect himself, his product, and his profits. That is evidenced by the fact that he kept weapons readily at hand. Further, courts long ago accepted that drug trafficking is a dangerous trade and that drugs present great risks to those who use them. Thus, the nature and circumstances of the underlying offense teach that Smith has proved to be a danger to society. That is underscored by the history and characteristics of the defendant. His criminal history is a significant one. It reflects several convictions for drug trafficking offenses for which Smith received virtually no punishment and benefited not at all from the leniency previous extended by the courts. So, the records counsels against a finding that Smith is not dangerous and likewise counsels against release.

Additionally, the Court must consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to provide

adequate deterrence, and protection of the public. 18 U.S.C. § 3553(a)(2). In this case, the seriousness of the offense weighs heavily against release because of the extremely serious offense conduct and the extensive drug dealing while in possession of weaponry necessary to protect profits and person. The structure of the operation also counsels against reducing the defendant's sentence as does Smith's role in the conspiracy. The defendant was not a small-time drug dealer. He operated a vast drug trafficking enterprise. Further, the defendant's criminal history illustrates that he is at a high risk of recidivism. He was accorded extensive leniency yet committed the same kinds of offenses time after time. And his crimes became increasingly serious over time. In addition, Smith committed the offenses of conviction here while under a period of good behavior for conviction of conspiracy to distribute cocaine in state court.

The defendant's best argument for compassionate release is rehabilitation in prison. Of course, rehabilitation standing alone cannot be considered as an extraordinary and compelling reason for compassionate release. <u>United States v. Hill</u>, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Oct. 13, 2020). Nonetheless, it is appropriate to consider rehabilitation as part of the analysis under 18 U.S.C. § 3553 and the defendant here has made significant effort toward rehabilitation. However, his

11

efforts at rehabilitation simply do not outweigh the seriousness of his crimes, the extensive criminal history that is his, and the danger that he poses to the public. <u>United States v. Pilgrim</u>, No. 3:19cr50, 2021 WL 2003548, at *4 (E.D. Va. May 19, 2021). On balance, the 3553(a) factors counsel against granting relief.

## CONCLUSIONS

For the foregoing reasons, the defendant's SECOND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT (ECF No. 77) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 17, 2021